IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

DEBBIE ULIBARRI;
ESTATE OF SHAWN FRANCISCO VIGIL;

Plaintiffs,

v.

CITY & COUNTY OF DENVER COLORADO, INCLUDING ITS SHERIFF'S DEPARTMENT;
ALVIN LACABE, in his official capacity as the Manager of Public Safety for the City & County of Denver and in his individual capacity;
JOHN DOE(S), former and current Administrators of any correctional facility maintained, operated, or controlled by the City & County of Denver or the Denver Sheriff's Department in their Official and Individual Capacities,

Defendants.

---

**COMPLAINT & JURY DEMAND**

---

Debbie Ulibarri on behalf of herself and as Personal Representative of the Estate of Shawn Francisco Vigil, for her Complaint and Jury Demand and alleges and states as follows:

**INTRODUCTION**

1. Shawn Francisco Vigil was Debbie Ulibarri's son. Mr. Vigil had been arrested by the Denver Police Department and was being held in the Denver County Jail as a deaf pre-trial detainee. While incarcerated, Mr. Vigil attempted suicide and severely incapacitated himself. Several days later, on October 1, 2005, he died as a direct and proximate result of the injuries he sustained during his suicide attempt. Upon information and belief, the Denver County Jail took no steps to accommodate Mr. Vigil's

hearing impairment and did not provide him necessary assistance in communicating his serious medical and/or mental health needs during his incarceration. Upon information and belief, it is the policy, practice and custom of the Denver County Jail to fail to accommodate individuals with hearing disabilities and this policy, practice and custom created the danger that suicide may occur with these individuals, specifically with Mr. Vigil, by the failure to provide these necessary accommodations. In addition, Defendants had a special relationship with respect to Mr. Vigil and their failure to provide protection and assistance to him resulted in his death. The Defendants also failed to operate the Denver County Jail in a manner consistent with state and federal laws, were negligent in operating the jail, in providing care, safety and supervision of Mr. Vigil and negligently failed to provide him basic medical and mental health care in a manner that accommodated his disability.

**JURISDICTION AND VENUE**

2. This action arises under the Constitution and laws of the United States and the State of Colorado, including Article III, Section 1 of the United States Constitution and 42 U.S.C. § 1983. Jurisdiction is conferred upon this court pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 1988, as amended by the Civil Rights Attorney Fee Award Act of 1976; 29 U.S.C. § 626(c)(1); and 28 U.S.C. §§ 1367(a) and 2201.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as all of the events giving rise to the claims occurred in the District of Colorado.

## PARTIES

4. Debbie Ulibarri ("Ms. Ulibarri") is currently and at all times relevant to this suit is and was a resident of the State of Colorado.

5. The Estate of the Decedent, Shawn Francisco Vigil, brings its claim through Debbie Ulibarri, the mother of Shawn Francisco Vigil, who will be appointed the personal representative of his Estate. At all times relevant to this suit, Mr. Vigil, was a resident of Colorado.

6. Defendant the City & County of Denver is a home rule municipality under Article XX, § 6 of the Colorado Constitution. The Denver Sheriff's Department is a department within the City & County of Denver. The City & County of Denver and its Sheriff's Department's official customs, policies, practices, and/or procedures caused the deprivations of Plaintiffs' constitutional rights. In accordance with C.R.S. § 24-10-109, Defendant City & County of Denver was provided with notice of Plaintiffs' (pendent state) claims on March 24, 2006. Pursuant to the Colorado Governmental Immunities Act, immunity from suit is waived pursuant to C.R.S. § 24-10-106(1)(b) or other applicable statutory or common law rule.

7. At all times relevant hereto, Defendant Alvin Lacabe has been the Manager of Public Safety for the City & County of Denver.

8. The John Doe Defendants are current or former administrators and employees of the City & County of Denver who have not been otherwise named in this Complaint. These Defendants, at all times relevant to the allegations concerning them, were responsible for creating and increasing the danger to the Plaintiffs, for the failure to properly train and supervise the officers involved, in violation of Plaintiffs' rights

pursuant to the Fourteenth Amendment to the United States Constitution, and certain state law claims for negligence and wrongful death. These same Defendants were also responsible for assuring that Mr. Vigil, as a hearing-impaired pretrial detainee was reasonably accommodated. These Defendants were performing the traditional government function of operating and maintaining custodial control of inmates and pre-trial detainees and were acting under color of law. They are sued in their official and individual capacities.

**FACTUAL ALLEGATIONS**

9. The Denver County Jail ("DCJ") received Mr. Vigil on August 28, 2005. Because of the seriousness of the allegations against him, Mr. Vigil faced the possibility that he might be incarcerated for many years. DCJ had a written policy requiring that all prisoners be evaluated for the risk they would suicide. Upon information and belief had no policy, practice, or custom that would allow it to effectively evaluate deaf prisoner's mental health status.

10. DCJ's records demonstrate that employees at the jail knew that Mr. Vigil was deaf. And, as a direct and proximate result of his disability, jail employees classified Mr. Vigil as a "Special Management Inmate" and housed him in the Special Needs Unit ("SNU") where he was isolated.

11. At the time of Mr. Vigil's incarceration, the SNU also housed a large number of juveniles.

12. During Mr. Vigil's incarceration in DCJ, he turned age twenty-three.

13. When Mr. Vigil was in the custody of the DCJ, the jail had no policy, procedure or equipment in place for accommodating the needs of deaf prisoners that

would allow its employees to have effective communications with those prisoners. The jail also had no policy, procedure or equipment in place for accommodating the needs of those deaf prisoners who wished to place telephone calls to family members.

14. At various times during his incarceration, Mr. Vigil indicated that he was having problems and asked to meet with the Administrative Review Board ("Board"). The Board is responsible for the operation of the SNU at DCJ. Despite Mr. Vigil's name appearing on the list of inmates who wished to meet with the Board, he was never taken before the Board.

15. Upon information and belief, on September 27, 2005, correctional officers failed to conduct timely rounds of the tier on which Mr. Vigil was being held. Those rounds are required to be made every half-hour. Indeed, during the time period between Mr. Vigil's hanging himself and the discovery of his body, one guard took a lengthy break leaving a single officer in charge of several tiers of prisoners which included including a large number of rowdy juveniles. After breakfast on the morning of September 27, 2005, an inmate discovered Mr. Vigil hanging in his cell.

16. Mr. Vigil was taken by ambulance to Denver General Hospital where he remained in critical and unstable condition.

17. After consulting with Mr. Vigil's health care providers, his family, including Plaintiff Debbie Ulibarri, made the difficult decision to withdraw medical support which resulted in Mr. Vigil's death at the age of twenty-three.

18. The Defendants engaged in the discriminatory practices described herein with malice or reckless indifference to Mr. Vigil's rights.

**FIRST CLAIM FOR RELIEF**
(Section 504 of the Rehabilitation Act of 1973)

19. Plaintiffs incorporate the allegations set forth in paragraphs 1 through 18 above, as if fully set forth herein.

20. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), provides in pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

21. Mr. Vigil was an individual with a disability within the meaning of the Rehabilitation Act of 1973.

22. Mr. Vigil was qualified to participate in the services, programs, activities, and benefits provided to prisoners at the DCJ facility within the meaning of the Rehabilitation Act of 1973.

23. The City and County of Denver and its Sheriff's Department receive and benefit from federal financial assistance.

24. The City and County of Denver and its Sheriff's Department denied Mr. Vigil access to programs, benefits and services provided to other prisoners at the DCJ solely on the basis of his disability and for which he was qualified to participate in, thereby violating the Rehabilitation Act of 1973.

25. By way of illustration, not limitation, The City and County of Denver and its Sheriff's Department, discriminated against Mr. Vigil by failing to provide him with the qualified interpreters he required to make himself understood and to understand

others and also deprived him of essential assistive devices or equipment, such as access to TDD telephone systems and closed-captioned programming by which he could have communicated with his family and sought the help he needed.

26. Despite the clear provisions of the Rehabilitation Act of 1973, the Defendants persisted in imposing conditions and practices which discriminate against Mr. Vigil and other persons with hearing impairments.

27. The Defendants' refusal to accommodate or assist Mr. Vigil directly and proximately caused his death.

28. As a direct and proximate result of the acts, omissions, and violations alleged above, Plaintiffs have suffered damages, injuries, pain and suffering, inconvenience, emotional distress, impairment of quality of life, past and future economic losses, including loss of earnings and loss of earning capacity, reasonable and necessary medical, hospital and other expenses, and with respect to Mr. Vigil, his death.

**SECOND CLAIM FOR RELIEF**
**(Americans with Disabilities Act)**

29. Plaintiffs incorporate the allegations set forth in paragraphs 1 through 28 above, as if fully set forth herein.

30. The Americans with Disabilities Act (hereinafter referred to as the "ADA"), 42 U.S.C. §§ 12101 et seq., and specifically 42 U.S.C. §§ 12131-12134, prohibits discrimination in public services on the basis of disability. 42 U.S.C. § 12132 provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

31. The ADA defines a "public entity" to include any state or local government or any department, agency, special purpose district, or other instrumentality of a State or local government, 42 U.S.C. § 12131(1). The DCJ is a "public entity" within the meaning of the ADA.

32. Mr. Vigil had a physical impairment that substantially limited one or more of his major life activities and thus he was an individual with disabilities within the meaning of the ADA, 42 U.S.C. §12102(2)(A).

33. Mr. Vigil, with or without reasonable modifications to rules, policies or practices, the removal of communication barriers, or the provision of auxiliary aids and services, met the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by the DCJ. Thus, Mr. Vigil was a "qualified individual with disabilities" within the meaning of the ADA, 42 U.S.C. § 12131(2).

34. The Defendants excluded Mr. Vigil from participation in DCJ services, programs and activities, and have denied him the rights and benefits accorded to other prisoners, solely by reason of his disability in violation of the ADA. In addition, the defendants have violated the ADA by intentionally failing or refusing to provide reasonable accommodations to Mr. Vigil and other persons with hearing disabilities.

35. The Defendants have willfully disregarded their duties under the ADA and have knowingly allowed unlawful conditions and practices to continue at the DCJ facilities for prolonged and unreasonable periods of time.

36. Despite the clear provisions of the ADA, the Defendants persist in imposing conditions and practices which discriminate against Mr. Vigil and other persons with

hearing disabilities. An actual controversy exists between the parties entitling Plaintiffs to declaratory relief pursuant to 28 U.S.C. § 2201.

37. As a direct and proximate result of the acts, omissions, and violations alleged above, Plaintiffs have suffered damages, injuries, pain and suffering, inconvenience, emotional distress, impairment of quality of life, past and future economic losses, including loss of earnings and loss of earning capacity, reasonable and necessary medical, hospital and other expenses, and with respect to Mr. Vigil, his death.

## THIRD CLAIM FOR RELIEF
## 42 U.S.C. § 1983 (Violations of the Eighth and the Fourteenth Amendments)
## (Against All Individually Named Defendants and John Does in their Individual and Official Capacities)

38. Plaintiffs incorporate the allegations set forth in paragraphs 1 through 37 above, as if fully set forth herein.

39. 42 U.S.C. § 1983 provides a remedy for constitutional violations and violations of federal statutes, where the violations are committed under color of State law.

40. All Defendants, except Defendant DCJ, have acted in reckless disregard for the serious medical and rehabilitation needs of Mr. Vigil and other persons with disabilities, constituting willful violations the Eighth and Fourteenth Amendments to the Constitution of the United States.

41. All Defendants, except Defendant DCJ, have engaged in discriminatory acts and practices constituting willful violations of the Rehabilitation Act of 1973 and the Americans with Disabilities Act.

42. All Defendants, except Defendant DCJ, were personally involved in the alleged constitutional and statutory violations in that each of them: (1) directly participated in the infraction; (2) failed to remedy the wrong after learning of a violation through a report

or appeal; (3) created a policy or custom under which unconstitutional and unlawful practices occurred; (4) allowed such a policy or custom to continue; or (5) was grossly negligent in managing subordinates who caused the unlawful conditions and events.

43. Plaintiffs, as a result of the Doe Defendant's mistreatment of Mr. Vigil, have suffered pain, anxiety and humiliation as a result of the Defendants' deliberate indifference to their rights and welfare.

44. As a direct and proximate result of the acts, omissions, and constitutional violations alleged above, Plaintiffs have suffered damages, injuries, pain and suffering, inconvenience, emotional distress, impairment of quality of life, past and future economic losses, including loss of earnings and loss of earning capacity, reasonable and necessary medical, hospital and other expenses, and with respect to Mr. Vigil, his death.

**FOURTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – State Created Danger**
**(Against All Individually Named Defendants and**
**John Does in their Individual and Official Capacities)**

45. Plaintiffs incorporate the allegations set forth in paragraphs 1 through 44 above, as if fully set forth herein.

46. Mr. Vigil was a member of a limited and specifically definable group – hearing-impaired pretrial detainees.

47. The conduct of the individually named Defendants and John Does placed Mr. Vigil at a substantial risk of serious, immediate and proximate harm by isolating him, by incarcerating him without conducting any meaningful analysis of whether he posed a substantial danger to himself, by precluding Mr. Vigil from having any effective means of communication with anyone at the jail or with his family or friends and by failing to adequately supervise him.

48. The high risk of serious harm to Mr. Vigil, as a deaf pretrial detainee facing a potentially lengthy period of incarceration, was obvious and known to the Defendants. Yet, the Defendants acted recklessly and calculatedly in conscious disregard of the known risks to Mr. Vigil and Plaintiffs and in violation of their own policies.

49. The Defendants created and/or increased the danger to Mr. Vigil by isolating him, by failing to communicate with him to determine his mental state and by failing to supervise him in any meaningful way. The Defendants also created and/or increased the danger to Mr. Vigil by failing to allow him to see the Administrative Review Board.

50. Mr. Vigil's death would not have occurred except for the actions of the Defendants which caused and/or increased Mr. Vigil and Plaintiffs' vulnerability to harm and ultimately caused the harm to Plaintiffs. The action and/or inaction on the part of Defendants rise to the level of shocking the conscience.

51. As a direct and proximate result of the acts, omissions, and constitutional violations alleged above, Plaintiffs have suffered damages, injuries, pain and suffering, inconvenience, emotional distress, impairment of quality of life, past and future economic losses, including loss of earnings and loss of earning capacity, reasonable and necessary medical, hospital and other expenses, and with respect to Mr. Vigil, his death.

52. As a result of the above and foregoing, Plaintiffs seek a declaration of a violation of their constitutional rights, as well as an award of compensatory and punitive damages, attorney's fees pursuant to 42 U.S.C. § 1988, costs, expert witness fees, and legal interest from the date of the officers' and administrators' actions and omissions.

**FIFTH CLAIM FOR RELIEF**
**Constitutional Denial of Due Process: Failure to Train and/or Supervise**
**(Against Manager of Public Safety Alvin Lacabe, John Doe Denver Sheriff's Department Training Officer and the City & County of Denver)**

53. Plaintiffs incorporate the allegations set forth in paragraphs 1 through 52 above, as if fully set forth herein.

54. The Manager of Public Safety for the City & County of Denver, Alvin Lacabe, acting on behalf of the City & County of Denver, is a policy-maker for the Denver Sheriff's Department and in that capacity establishes policies, procedures, customs and/or practices for its officers regarding the housing of inmates and pretrial detainees. He, along with the other supervising John Doe, are responsible for the training and supervision of officers of the Denver Sheriff's Department.

55. The policies, procedures, customs and/or practices established by City & County of Denver, the Manager of Public Safety Alvin Lacabe, and the John Doe Training Officer are implemented by officers of the Denver Sheriff's Department.

56. The City & County of Denver, Lacabe, and the John Doe Training Officer developed and maintained policies, procedures, customs and/or practices regarding the detention of hearing impaired prisoners, which exhibit a reckless, deliberate or calculated indifference to the constitutional rights of such persons, and either knew or should have known, that such policies, procedures, customs and/or practices were motivated by intent or reckless, deliberate or calculated indifference to cause harm to said citizens, which violated Plaintiffs' constitutional rights, including their right to due process under the law.

57. The City & County of Denver, Lacabe, and the John Doe Training Officer failed to properly train and supervise officers of the Denver Sheriff's Department with

respect to failing to provide in any way for the needs of hearing impaired prisoners such as Mr. Vigil, which failure violated Plaintiffs' constitutional rights, including their right to due process under the law, as set forth above.

58. Above Defendants must have known and were aware of the training and supervision given to officers in the Denver Sheriff's Department in dealing with hearing-impaired inmates, were unnecessarily dangerous without regard to the consequences, and amounted to unconstitutional treatment of Mr. Vigil.

59. Defendants knew or should have known that the training provided and the supervision given to its officers regarding the detention and isolation of hearing impaired prisoners were reckless and/or done with calculated and deliberate indifference to the rights of those in its legal and physical custody, and that further misconduct in that area was inevitable.

60. Defendants had a statutorily imposed duty to protect the constitutional rights of prisoners, including Mr. Vigil, from violations of those rights by members of the Denver Sheriff's Department, and by failing to properly train such officers, Defendants violated the Plaintiffs' constitutional rights.

61. The direct result of Defendants' failure to properly train and supervise its officers was the violation of Plaintiffs' rights as previously described herein causing Plaintiffs' damages, injuries, pain and suffering, inconvenience, emotional distress, impairment of quality of life, past and future economic losses, including loss of earnings and loss of earning capacity, reasonable and necessary medical, hospital and other expenses, and physical impairment, and with respect to Mr. Vigil, his death.

62. As a result of the above and foregoing, Plaintiffs seek a declaration of a violation of their constitutional rights, as well as an award of compensatory and punitive damages, attorneys' fees pursuant to 42 U.S.C. § 1988, costs, expert witness fees, and legal interest from the date of the officers' actions and omissions from the individual Defendants.

## SIXTH CLAIM FOR RELIEF
**State Claim of Negligence**
**(Against City & County of Denver, Manager of Public Safety Alvin Lacabe in Respondeat Superior/Official Capacity and John Does in Respondeat Superior/Official Capacity)**

63. Plaintiffs incorporate the allegations set forth in paragraphs 1 through 62 above, as if fully set forth herein.

64. In the performance of their duties, the officers who participated housing Mr. Vigil had a duty to not act in a manner that created an unreasonable risk of injury or damage to life or property.

65. As described above, the officers who housed Mr. Vigil willfully, wantonly and negligently committed the following acts:

a. Isolating Mr. Vigil in the Special Needs Unit solely on the basis of his disability;

b. Failing to provide Mr. Vigil or his family any effective way of communicating;

c. Failing to provide Mr. Vigil with any effective way of communicating with his jailers;

d. Failing to allow Mr. Vigil to appear before the Administrative Review Board despite his request to do so;

    e. Failing to adequately supervise Mr. Vigil; and

f. Acting in a manner without due regard for the safety of Mr. Vigil.

66. The above conduct of the officers caused the harm to Plaintiffs.

67. Alvin Lacabe, in his official capacity, and the City and County of Denver and the Denver Sheriff's Department are liable for the above actions of its officers.

68. Governmental immunity for the above actions is waived pursuant to C.R.S. § 24-10-106(1)(b).

**SEVENTH CLAIM FOR RELIEF**
**State Claim of Wrongful Death for Plaintiff Debbie Ulibarri**
**(Against City & County of Denver, Manager of Public Safety Alvin Lacabe in Respondeat Superior/Official Capacity and John Does in Respondeat Superior/Official Capacity)**

69. Plaintiffs incorporate the allegations set forth in paragraphs 1 through 68 above, as if fully set forth herein.

70. Plaintiff Debbie Ulibarri is the mother of Shawn Francisco Vigil.

71. Mr. Vigil was unmarried and without descendants at the time of his death.

72. Mr. Vigil's death was caused by the negligent conduct of the Defendants.

73. Mr. Vigil's death was caused by the reckless conduct of the defendants.

74. Defendants are liable to Debbie Ulibarri for damages pursuant to C.R.S. § 13-21-202.

**EIGHTH CLAIM FOR RELIEF**
**State Claim for Negligent Failure to Train/Supervise Officers**
**(Against City & County of Denver, Manager of Public Safety Alvin Lacabe in Respondeat Superior/Official Capacity and John Does in Respondeat Superior/Official Capacity)**

75. Plaintiffs incorporate the allegations set forth in paragraphs 1 through 74 above, as if fully set forth herein.

76. The Defendants herein had a duty to train and supervise the officers under their supervision to perform their duties including accommodating the needs of deaf prisoners and the competent supervision of those same prisoners and not creating an unreasonable risk of harm to life.

77. Defendants negligently and willfully and wantonly failed to train and supervise their respective officers in the performance of the above duties.

78. As a result of the failure to properly train and supervise their officers, the jailers committed the following acts:

   a. Isolating Mr. Vigil in the Special Needs Unit solely on the basis of his disability;

   b. Failing to provide Mr. Vigil or his family any effective way of communicating;

   c. Failing to provide Mr. Vigil with any effective way of communicating with his jailers;

   d. Failing to allow Mr. Vigil to appear before the Administrative Review Board despite his request to do so;

   e. Failing to adequately supervise Mr. Vigil; and

   f. Acting in a manner without due regard for the safety of Mr. Vigil.

79. The willful, wanton and negligent failure to train and supervise these officers caused the harm to Plaintiffs.

80. Lacabe, in his official capacity, and the City & County of Denver are liable for the above actions of its officers under the theory of respondeat superior.

81. Governmental immunity for the above actions is waived pursuant to C.R.S. Section 42-4-108.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against the Defendants, jointly and severally, and grant:

(a) Appropriate relief at law and equity;

(b) Declaratory judgment against the individually named Defendants in their official capacities and against the named entities, compensatory and consequential damages, including but not limited to damages for emotional distress, humiliation, loss of income and enjoyment of life, and other pain and suffering on all claims by law in the amount to be determined at trial against all Defendants, as allowed by law;

(c) Punitive damages against individuals in their individual capacities on all federal claims allowed by law and in an amount to be determined at trial;

(d) Attorneys' fees and costs of this action, including expert witness fees, on all claims allowed by law;

(e) Pre-judgment and post-judgment interest at the lawful rate; and

(f) Any further relief that this Court deems just and proper, and any other relief as allowed by law.

PLAINTIFFS REQUEST A JURY ON ALL ISSUES SO TRIABLE.

Respectfully submitted this 28th day of August 2007.

KING & GREISEN, LLP

By: s/ Laura E. Schwartz
Laura E. Schwartz
1670 York Street
Denver, Colorado 80206
Phone: (303) 298-9878
Fax: (303) 298-9879

                                                      Email: schwartz@kinggreisen.com
                                                      Attorneys for Plaintiffs

Plaintiffs' Address:
11968 East 1st Avenue
Aurora, CO 80011