IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  07-cv-01814-WDM-MJW

DEBBIE ULIBARRI;
ESTATE OF SHAWN FRANCISCO VIGIL;
COLORADO CROSS-DISABILITY COALITION, a Colorado Corporation;
COLORADO ASSOCIATION OF THE DEAF, a Colorado Corporation;
ROGER KREBS;
SARAH BURKE;

  Plaintiffs,

v.

CITY & COUNTY OF DENVER, INCLUDING ITS SHERIFF DEPARTMENT, AND ITS POLICE DEPARTMENT;
ALVIN LACABE, in his official capacity as Manager of Public Safety for the City & County of Denver, and in his individual capacity;
WILLIAM LOVINGIER, in his official capacity as the Director of Corrections and Undersheriff for the City & County of Denver, and in his individual capacity;
RON D. FOOS, in his official capacity as Division Chief for the County Jail Division for the City & County of Denver, and in his individual capacity;
GARY WILSON, in his official capacity as Division Chief for the Pre-Arraignment Detention Facility Division, and in his individual capacity;
GERALD R. WHITMAN, in his official capacity as Chief of Police, and in his individual capacity.

  Defendants.

---

**MOTION TO COMPEL DISCOVERY RESPONSES**

---

  Plaintiffs, Debbie Ulibarri on behalf of herself and as Personal Representative of the

Estate of Shawn Francisco Vigil, Colorado Cross-Disability Coalition, Colorado Association of

the Deaf, Roger Krebs, and Sarah Burke by and through their attorneys, Carrie Ann Lucas and

Kevin W. Williams of the Colorado Cross-Disability Coalition, King & Greisen, LLC, and Fox

& Robertson, P.C., hereby submit their Motion to Compel Discovery Responses pursuant to Fed. R. Civ. P. 37(a)(3)(B). The grounds for this motion are set forth below:

## INTRODUCTION

Plaintiffs served their First Set of Discovery to Defendants on January 4, 2008. The requests included eleven interrogatories and five requests for production. *See* First Set of Written Discovery Propounded to Defendants, attached hereto as Exh. A. Defendants requested several extensions and served responses on March 7, 2008, and provided responsive documents on March 13, 2008. *See* Defendants' Responses to First Set of Written Discovery Propounded to Defendants, attached hereto as Exh. B. Plaintiffs had many disputes about the discovery responses. After conferring with Defendants to secure information and material without court action, Defendants provided additional responsive documents on May 2, 2008, and May 7, 2008, but have not provided responsive documents to several interrogatories and requests for production of documents. Plaintiffs dispute discovery responses to four interrogatories. The disputed interrogatories and responses are as follows:

> **Interrogatory No. 5:** Identify any and all policies, practices and/or procedures in effect at any time since January 1, 2005 related to the ability of inmates and detainees to use disability related tools and equipment while detained and incarcerated, including but not limited to wheelchairs, white canes, including but not limited to long white canes, service animals, slates and styluses, canes, crutches, walkers, talking book machines, communication devices, and TTYs, identify any document describing or otherwise relating to such policies, practices

and/or procedures, and identify any individuals with knowledge of such policies, practices and/or procedures.

> **Response to Interrogatory No. 5:** Defendants object to this interrogatory on the grounds that the information sought is oppressive and overbroad, and is not discoverable under Fed. R. Civ. P. 26(b). The information sought is not relevant to any claim or defense, nor is it reasonably calculated to lead to the discovery of admissible evidence, because the information is inadmissible under F.R.E. 402, 403 and 404. Without waiving these objections, see the answer to Interrogatory No. 1.

**Interrogatory No. 6:** Identify any and all accommodations provided to Roger Krebs and Shawn Vigil whether pursuant to the ADA or Rehabilitation Act or otherwise, while detained at the PADF and/or DCJ, identify any document describing or otherwise relating to such accommodations, and identify any individuals with knowledge of such accommodations.

> **Response to Interrogatory No. 6:** Pursuant to usual procedure both inmates would have been offered the use of the TDD, the opportunity to request a sign language interpreter, to submit kites (an inmate message form), and to communicate in writing with officers. All officers on duty at PADF and DCJ are expected to be familiar with these procedures. See Bates Nos. 40, 124-132, 135-

      137, and 233-244.

**Interrogatory No. 10:** Identify all policies, practices and/or procedures in effect at any time since January 1, 2005 relating to supervision, observation and/or monitoring of inmates and detainees at the DCJ, including but not limited to written and unwritten policies, schedules, location of personnel before, during and after any supervision, observation and/or monitoring, and/or recording of information relating to any supervision, observation and/or monitoring, and identify all documents relating to such supervision, observation and/or monitoring, and all individuals with information related to such supervision, observation and/or monitoring.

      **Response to Interrogatory No. 10:** Defendants object to this interrogatory on the grounds that the information sought is oppressive and overbroad, and not discoverable under Fed.R.Civ.P. 26(b). The information sought is not relevant to any claim or defense, nor is it reasonably calculated to lead to the discovery of admissible evidence, because the information is inadmissible under F.R.E. 402, 403 and 404. All procedures of the DCJ and PADF relate in some way to the supervision, observation, and monitoring of inmates and detainees.

**Interrogatory No. 11:** Identify all complaints received by any Defendant between January 1, 2000 and the present relating to alleged discrimination

against, communication with and/or the provision of accommodations to inmates with disabilities at PADF and/or DCJ, identify all documents relating to such complaints and identify any individuals with knowledge of such complaints.

**Response to Interrogatory No. 11:** Defendants object to this interrogatory on the grounds that the information sought is oppressive and overbroad, and not discoverable under Fed.R.Civ.P. 26(b). The information sought is not relevant to any claim or defense, nor is it reasonably calculated to lead to the discovery of admissible evidence, because the information is inadmissible under F.R.E. 402, 403 and 404.

In addition to disputes concerning these interrogatories, Plaintiffs contest the adequacy of Defendants' Fed. R. Civ. P. 26(a)(2) disclosures to the extent that they contain material redactions. Finally, Plaintiffs contest the Interrogatory responses to the extent that they were directed to all Defendants, but not verified by each Defendant.

## CERTIFICATE OF COMPLIANCE WITH D.C.COLO.LCIVR 7.1(A)

Carrie Ann Lucas, counsel for Plaintiffs, certifies that she "has in good faith conferred" with counsel for Defendants "in an effort to secure the information or material without court action." Specifically, on March 19, 2008, counsel for Plaintiffs, Carrie Ann Lucas, conferred with counsel for Defendants, Suzanne Fasing, by telephone to discuss some of the inadequacies in Defendants' discovery responses. Lucas Decl. ¶ 3, attached hereto as Exh. C. On March 21, 2008, Ms. Lucas reviewed unredacted documents at Ms. Fasing's office, and met briefly with

Ms. Fasing to once again discuss the inadequacies in Defendants' discovery responses. *Id*. at ¶ 4. On March 28, 2008, Ms. Lucas sent a detailed letter to Ms. Fasing, outlining the inadequacies in Defendants' discovery responses, and offered to meet in person to discuss the issues. *Id*. at ¶ 5. *See* March 28, 2008 Lucas letter attached hereto as Exh. D. On April 7, 2008, Ms. Fasing requested additional time to respond to Plaintiffs' letter. Lucas Decl. ¶ 6.

On April 18, 2008, Plaintiffs conducted records depositions of Mary Dulacki, the custodian of records for the Denver Department of Safety, and Edward Neuberg, the custodian of records for the Denver Office of Disability Rights. *Id*. at ¶ 7. On April 30, 2008, Plaintiffs took a records deposition of Richard Rosenthal, the custodian of records for the Denver Office of the Independent Monitor. *Id*. at ¶ 8.

On May 7, 2008, Ms. Lucas and Ms. Fasing had a lengthy telephone call to discuss the shortcomings in Defendants' discovery responses. *Id*. at ¶ 9. During that call Ms. Fasing promised to investigate several categories of documents that were not produced. *Id*. In lieu of meeting, Ms. Lucas and Ms. Fasing scheduled a follow-up telephone conference for May 16, 2008 to provide an update about further production of documents and amended discovery responses. *Id*. Ms. Fasing cancelled the May 16, 2008 call, and the parties spoke instead on May 19, 2008. *Id*. at ¶ 10.

On May 19, 2008, Ms. Lucas called Ms. Fasing to follow-up on the issues discussed on May 7, 2008. *Id*. at ¶ 11. Ms. Fasing had no other update other than an offer to remove the redactions from one page, and possibly remove the redactions from a second page. *Id.* It was clear that Ms. Fasing did not follow-up on any of the other issues discussed in the May 7, 2008

call. Ms. Lucas restated her intention to file a motion to compel if further documents and responses were not received by May 23, 2008. *Id*. at ¶ 12. As of the date of filing of the instant motion, Defendants still have not produced additional documents or written responses from Defendants. *Id*. at ¶ 13.

As the record demonstrates, Plaintiffs have attempted to work in good faith with defense counsel to secure complete discovery responses without court intervention.

## BACKGROUND

This case is a disability discrimination case in which the Plaintiffs allege Defendants discriminate against people with disabilities at the Denver County Jail ("DCJ") and the Pre-Arraignment Detention Facility ("PADF") by failing to provide accommodations, including, but not limited to, sign language interpreters, and by unnecessarily isolating inmates and detainees with disabilities. Plaintiffs also allege the Denver Police Department discriminates against people with disabilities by failing to provide sign language interpreters and other accommodations to deaf and hard of hearing individuals and people with diabetes. Plaintiffs' disability discrimination claims arise under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.* In addition, Plaintiffs' complaint alleges multiple constitutional violations, via § 1983, for Defendants' treatment of the individual plaintiffs during their confinements, and several state law tort claims in connection with the death of Shawn Vigil while in Defendants' custody. Plaintiffs seek both damages and prospective injunctive relief.

# ARGUMENT

## I.   Legal Standard

The benchmark for determining whether matters are discoverable is Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides, in pertinent part, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . ." This rule is to be liberally construed. *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Further, the Tenth Circuit has continually held that the scope of discovery is especially broad in discrimination and constitutional cases. *See Gomez v. Martin-Marietta Corp.*, 50 F.3d 1511, 1520 (1995)*; Rich v. Martin Marietta Corp.*, 522 F.2d 333, 343 (10th Cir. 1975). The rules mandate that, "[a] party to an action has the right to have the benefits of discovery procedure promptly, not only in order that he may have ample time to prepare his case before scheduled trial, but also in order to bring to light facts which may entitle him to summary judgment or induce settlement prior to trial." *U.S.A. for the Use of Western & Brooker Co. v. Continental Casualty Co.*, 303 F. 2d 91, 92 (4th Cir. 1962).

Here, Defendants have refused to provide information responsive to several of the discovery requests, which prevents Plaintiffs from effectively inquiring about the propriety of Defendants' policies, Defendants' compliance with their policies, Defendants' responses to similar complaints, or even Defendants' responses to Plaintiffs' own complaints. In other cases, Defendants have produced documents with redactions of relevant portions of the documents, or have only produced portions of documents. This refusal to produce relevant information and documents precludes Plaintiffs from obtaining meaningful information that is imperative in

proving each of their claims. These tactics impede Plaintiffs' ability to prepare their case and to cause them needless expense and effort in filing a motion to compel.

## II.     Defendants are refusing to identify policies, practices and procedures about the use of disability related tools and equipment by inmates and detainees.

In their Interrogatory No. 5, Plaintiffs requested that Defendants identify policies, practices and procedure in place since January 1, 2005 relating to the ability of inmates and detainees to use disability-related tools and equipment. Defendants responded that the request was overly broad and referred Plaintiffs to their response to Interrogatory No. 1; the latter related only to policies concerning translation and interpreting services.[1]

Thus, while Defendants provided information about the use of sign language interpreters, TTYs, videophones and language lines in response to Plaintiffs' Interrogatory No. 1, Defendants refuse to provide information about other disability related tools and equipment, such as wheelchairs, crutches, walkers, canes, braille slates and styluses, and service animals.

---

[1]     **Interrogatory No. 1:**  Identify any and all policies, practices and/or procedures in effect at any time since January 1, 2005 relating to the provision of translation or interpreting service to inmates or detainees at the PADF or DCJ who communicate in a language other than English, including but not limited to American Sign Language, identify any documents describing or otherwise relating to such policies, practices and/or procedures, including the provision of services pursuant to those policies, practices and/or procedures since January 1, 2005, including but not limited to policies, practices and procedures for requesting interpreter for court while detained, and identify any individuals with knowledge of such policies, practices and/or procedures.
**Response:**  The procedures for use of the Telecommunication Device for the Deaf (TDD) at the Pre-Arraignment Detention Facility ("PADF"), and for the use of the language line services, are documented in Bates Nox. 245 and 246. The procedures for the video phone at the Denver County Jail ("DCJ") are documented in Bates Nox. 345-350. See also Bates Nos. 351-353. All officers on duty at PADF and DCJ are expected to be familiar with these procedures.

Defendants object using generic, boilerplate, language to justify not answering the interrogatory. Defendants do not even attempt to support their assertions that the interrogatory is overbroad, oppressive, or not calculated to lead to the discovery of admissible evidence.

A general objection without supporting argument cannot be sustained. Objections that a discovery request is overbroad or burdensome must be supported by evidence. *Horizon Holdings, LLC v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D. Kan. 2002). "Defendants have the burden to show facts justifying their objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome." *Id*. Defendants have provided **no** evidence that the information sought is burdensome.

Plaintiffs' request is not overly broad. The request is temporally limited – from 2005 to the present – that is, from the year Shawn Vigil was jailed and died to the present, including the period when other Plaintiffs were detained. It is limited to a specific category of policies – policies about the use of disability related equipment and tools while detained or incarcerated. This information is directly relevant to Plaintiffs' claims. For example, Plaintiff Roger Krebs, a Deaf man who used crutches, was isolated during his detention. Policies about the use of crutches and other mobility equipment, for example are directly relevant. Plaintiffs' claims include claims that people with disabilities other than deafness are discriminated against on the basis of their disabilities. The information sought in Interrogatory No. 5 is directly relevant to that claim, and as such is not overly broad.

**III.    Defendants refuse to provide specific information about accommodations offered to Plaintiffs Shawn Vigil and Roger Krebs.**

In their Interrogatory No. 6, Plaintiffs requested that Defendants identify accommodations provided to Roger Krebs and Shawn Vigil while detained at the PADF and/or DCJ. Defendants responded by saying that pursuant to procedure, Mr. Krebs and Mr. Vigil "would have been" offered accommodations such as the use of a TTY, or the ability to request a sign language interpreter, or send a kite. Defendants did not identify accommodations actually offered to Plaintiffs Krebs and Vigil.

This interrogatory is at the heart of the case. Plaintiffs' request specifically asked Defendants to identify accommodations offered to Plaintiffs Vigil and Krebs while at the PADF and or DCJ and to identify individuals with knowledge of those accommodations. Because Defendants respond only that they "would have" offered the accommodations, and identify only individuals who are generally familiar with the procedures, ultimately, Defendants have not responded to Interrogatory No. 6 nor have they provided any grounds for such refusal.

**IV.    Defendants refuse to provide policies concerning supervision, observation and monitoring of inmates.**

In their Interrogatory No. 10, Plaintiffs requested that Defendants identify policies, practices and procedures relating to supervision, observation and/or monitoring of inmates and detainees at the DCJ. Defendants responded that the request was overly broad and stated all policies and procedures relate to the supervision, observation or monitoring of inmates and detainees.

-11-

As noted *supra*, general objections without supporting evidence cannot be sustained. Plaintiffs' request is not overly broad. The request is temporally limited – from 2005 to present – the relevant time period of the events in Plaintiffs' claim. It is limited to a specific category of policies – policies about the supervision, monitoring and observation of inmates and detainees. The requested information is directly relevant to Plaintiffs' claims, including, *inter alia*, the claim that supervision was inadequate, thus causing Shawn Vigil's suicide. The information sought in Interrogatory No. 10 is directly relevant to that claim, and as such is not overly broad.

Plaintiffs understand Defendants' contention that every policy in some way may relate to the supervision, observation and monitoring of inmates, much in the way that in a large retail chain, every policy somehow relates to selling merchandise. As a result, Plaintiffs are willing to limit their request to the policy and procedure manuals for the DCJ and PADF as well as the Denver Sheriff Department "Department Order Book." Defendants have provided disjointed portions of these policy and procedure manuals, but have refused -- in response to Plaintiffs' request -- to provide complete versions.

**V.     Defendants refuse to provide information about disability related complaints.**

In their Interrogatory No. 11, Plaintiffs requested that Defendants identify complaints about disability discrimination, the provision of accommodations to people with disabilities, or complaints about communication with people with disabilities. Defendants responded that the request was overly broad and oppressive and provided no other information.

As noted *supra*, general objections without supporting evidence cannot be sustained. Plaintiffs' request is not overly broad. The request is temporally limited, from January 1, 2000

to present. It is limited to a specific category of information – prior complaints about disability discrimination and accommodations at the PADF and DCJ. This information is directly relevant to Plaintiffs' claims. Plaintiffs seek the complaints of similarly situated individuals to determine if and how Defendants responded to such complaints. This information, information that may demonstrate prior knowledge of discrimination, is directly relevant to Plaintiffs' claims and Defendants' defenses, and as such is not overly broad.

Ms. Fasing has indicated that there are a large number of "kites" (intra facility communication between inmates and detainees and facility staff), and a large number of grievances. Plaintiffs have repeatedly asked that Defendants simply make these materials available, and allow Plaintiffs' counsel to review them prior to copying. Pursuant to the Denver Sheriff's Department document retention policy, inmate records are retained for three years, and grievances are retained for four years. *See* Denver Sheriff Department Policy 3700.1, p. 4, attached hereto as Exh. E. Therefore, there is a limited pool of documents to be reviewed.

In addition to the records kept by the Denver Sheriff Department, some complaints have been received and retained by the Denver Office of the Independent Monitor. *See* Richard Rosenthal Depo. p. 17, l.1 - p. 18, l. 6; p. 19, l. 4-15, attached hereto as Exh. F.

Ultimately, Defendants have not responded to Interrogatory No. 11 nor have they provided any grounds for such refusal.

### VI. Defendants' discovery responses and Rule 26(a)(1) disclosures are inadequate because they contain redactions.

Defendants have provided a number of documents in their disclosures and discovery

responses with portions of the documents redacted.  *See* Redacted pages attached hereto as Exh. G.  The parties stipulated to a Protective Order that was amended and signed by this Court on January 28, 2008.  (Docket No. 35).  The Protective Order is sufficient to protect the confidentiality of the redacted portions of the documents.

On March 21, 2008, Plaintiffs reviewed unredacted versions, and subsequently, on May 19, 2008, Defendants agreed to provide an unredacted version of one page, although to date, that page has not been produced.

Defendants recently produced a privilege log that claims these documents are protected under the official information privilege.  *See* Privilege Log attached hereto as Exh. H. Defendants claim the official information privilege, but provide no support for claiming the privilege.  A party resisting discovery based on a claim of privilege has the burden of establishing that the privilege applies. *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir.1984); *Colorado v. Schmidt-Tiago Construction Co.*, 108 F.R.D. 731, 734 (D. Colo. 1985). When Plaintiffs requested additional authority for claiming the official information privilege, Defendants simply referred Plaintiffs back to the privilege log.  *See* May 19, 2008 email attached hereto as Exh. I.

Federal common law recognizes an "official information" privilege, which extends to the security of correctional facilities. *Whitington v. Sokol*, 2008 WL 435277 (D. Colo. 2008), attached hereto as Exh. J.  However, the official information privilege is not absolute. *Id*.  When analyzing whether the privilege should apply, courts conduct a case by case analysis, "in which the interests of the party seeking discovery are weighed against the interests of the government

entity asserting the privilege." *Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995).

In *Whitington*, the plaintiff was an inmate at the Colorado Department of Corrections. 2008 WL 435277 (D. Colo. 2008). The plaintiff requested policies and administrative material relating to the use of force in correctional facilities. *Id*. at *2. The *Whitington* Court held that certain information requested might jeopardize the safety in the facility. *Id*. However, the court refused to extend the privilege to a request for a general statement in the administrative regulations, and policies regarding the "circumstances and manner under which use of force incidents must be reported by staff" because they were relevant to the plaintiff's case. *Id*.

In this case, none of the Plaintiffs are current inmates or detainees at the DCJ or PADF. As in *Whitington*, Plaintiffs are requesting information that is relevant and pertinent to their case. The information is important, as it is relevant to claims in Plaintiffs' case.

While Plaintiffs believe the protective order is sufficient, they have requested that Defendants propose modifications to the extant protective order to alleviate their concerns regarding the security of the information. Lucas Decl. ¶¶ 4 and 9. Plaintiffs would stipulate to a protective order that, in the case of information that could potentially jeopardize safety in the DCJ or PADF, would limit access to attorneys and expert witnesses only.

Notwithstanding this, Defendants' claim that these documents are protected under the official information privilege rings hollow when considering the content of the redacted information. The redactions are inconsistent, and at times nonsensical. For example, Defendants redacted the form number to make a routine maintenance request. *See* Ex. G, Bates No. 000263. While Plaintiffs do not necessarily need this information, it shows the arbitrary

nature of Defendants' redactions: certainly knowing the form number for a Work Order will not jeopardize the safety in the facility. Other redactions are of information that is available to the public. Publically known information does not jeopardize safety in the facility. Redactions on Bates Nos. 000312, 000314, of Exh. G, contain information that was provided to Plaintiffs pursuant to a Colorado Open Records Act request, prior to the initiation of this litigation. *See* Bates Nos. P000053, P000067, and P000068, attached hereto as Exh. K. Not only is the open records act information unredacted, but the documents are not even confidential, and are available to the general public.[2]

Similarly, the redactions on page number 000246 of Ex. G, which Defendants have agreed to remove but have not yet removed -- conceal the times when the facility's telecommunication device for the deaf ("TDD") will be checked for messages. This policy is directly relevant to Plaintiffs' claims. However, Defendants have not agreed to remove the redactions from page 000273 of Exh. G which has the same information in a different format.

A significant number of the redacted pages concern policies for classification and housing, policies that Plaintiffs are challenging with this lawsuit. Bates Nos. 000250, 00261, 000271, 000312, and 000314 all pertain to housing and classification and are thus relevant to Plaintiffs' claims.

Other redacted portions concern officer or deputy responsibilities. See, e.g., Exh. G,

---

[2] Plaintiffs dispute the designation of many documents as Confidential pursuant to the Protective Order. However, in an effort to minimize disputes at this stage, Plaintiffs are not challenging the designation at this time. Plaintiffs do not intend to waive their ability to challenge the confidential designation at a later time.

Bates Nos. 000282, 000283, 000293, 000294, 000319, 000320, 000321, 000322, 000327, 000333, 000334. Plaintiffs allege that Defendants did not provide appropriate supervision due to other duties. These documents are also relevant to Plaintiffs' claims.

## VII. Defendants' discovery responses are inadequate because they are not signed under oath.

The discovery responses were directed to all Defendants, including the individual Defendants, yet all of the responses were verified only by Sonya Gillepsie, who ostensibly signed on behalf of Defendant City & County of Denver. Fed. R. Civ. P. 33(b) requires that interrogatories be answered "under oath" "by the party to whom they are directed," and "[t]he person who makes the answers must sign them."

The single verification page provided to Plaintiffs is signed and notarized, but is not signed under oath, and provides no reference to the interrogatory responses, nor does it provide Ms. Gillepsie's title, or any other indication of her agency on behalf of the City & County of Denver. *See* Verification page attached hereto as Exh. L. Ms. Gillepsie is neither a Defendant, an individual identified in Defendants' Rule 26(a)(1) disclosures, nor an elected official or officer of Defendant City & County of Denver.

Despite multiple requests, none of the individual Defendants have verified the interrogatory responses, nor has Defendant City & County of Denver provided information about Ms. Gillepsie's authority to verify the responses on behalf of Defendant City & County of Denver. Plaintiffs respectfully request that this Court order each Defendant to sign the interrogatory responses under oath.

## CONCLUSION

Plaintiffs respectfully request that this Court order Defendants to provide:

1.  Complete responses to Interrogatories 5, 6, 10, and 11;

2.  Unredacted versions of Bates Nos. 000246, 000250, 000261, 000271, 000273, 000282, 000283, 000293, 000294, 000312, 000314, 000319, 000320, 000321, 000322, 000327, 000333, and 000334; and

3.  Complete interrogatory responses signed under oath by the Defendants to whom they were directed.

Dated: June 10, 2008                Respectfully submitted,

COLORADO CROSS DISABILITY COALITION

s/ Carrie Ann Lucas
Carrie Ann Lucas
Kevin W. Williams
655 Broadway, Suite 775
Denver, CO 80203
303.839.1775 (voice)
303.839.1782 (fax)
clucas@ccdconline.org
kwilliams@ccdconline.org

Laura E. Schwartz
Paula Dee Greisen
King & Greisen, LLP
1670 York Street
Denver, CO 80206
(303) 298-9878 (voice)
(303) 298-9879 (fax)
schwartz@kinggreisen.com
greisen@kinggreisen.com

Amy F. Robertson

-18-

Fox & Robertson, P.C.
910 16th Street, Suite 610
Denver, CO 80204
303.595.9700 (voice)
303.595.9705 (fax)
arob@foxrob.com          `

Attorneys for Plaintiffs

<u>Certificate of Service</u>

I hereby certify that on June 10, 2008, I served the foregoing via the CM/ECF system and First Class Mail, postage prepaid, to:

>Suzanne A. Fasing, Esq.
>Thomas G. Bigler, Esq.
>Denver City Attorney's Office
>Litigation Section
>201 W Colfax Ave, Dept 1108
>Denver, CO 80202

s/ Carrie Ann Lucas
Carrie Ann Lucas
Attorney for Plaintiffs
Colorado Cross-Disability Coalition
655 Broadway
Suite 775
Denver, CO 80203
303.839.1775 (voice)
303.839.1782 (fax)
clucas@ccdconline.org