IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

DEBBIE ULIBARRI, et al.,            )
                                    )
              Plaintiffs,            )
                                    )
vs.                                 )    Case No. 07-CV-1814-ODS
                                    )
CITY & COUNTY OF DENVER, et al.,    )
                                    )
              Defendants.            )

ORDER ADDRESSING OUTSTANDING ISSUES

On August 24, 2011, the Court issued an Order that, *inter alia*, summarized the status of the case and invited the parties to express their agreement or disagreement with the Court's understanding. The Court has reviewed the parties' response and re-examined the Record in this case. The Court now resolves the outstanding differences.

First is the issue of the statute of limitations as it relates to claims asserted by Shawn Vigil's estate and by his mother. To place the issues in context, the Court notes that Vigil was arrested on August 17, 2005, and taken to the Pre-arraignment Detention Facility ("PADF"). He had an initial appearance before a Denver County Court Judge on August 18, and was transferred from the PADF to the Denver County Jail on August 25. Vigil was found hanging in his cell on September 27, 2005, and died on October 1. Second Amended Complaint, ¶¶ 36, 38. This lawsuit was filed on August 28, 2007.

In an Order dated September 30, 2010, the Honorable Walker D. Miller dismissed Vigil's claims based on his arrest as time-barred. Defendant contends Vigil's claims involving the PADF are also time-barred, and there seems to be little dispute on this point. Judge Miller indicated as much in an Order dated June 28, 2011, and Plaintiffs do not contend there is an independent claim arising from Vigil's treatment at the PADF. To the extent Defendant is arguing that *evidence* of events at the PADF should be excluded, this is a different issue – one that was addressed in Judge Miller's June 28, 2011, Order, particularly on page nine. The undersigned adheres to Judge Miller's conclusion that such evidence should not be categorically rejected, that some of

this evidence may be admitted, that "trial objections . . . may be raised," and that the parties should propose limiting instructions to guide the jury's consideration of such evidence. The Court further states it will entertain motions in limine directed to such evidence (so long as such motions are particularized and do not seek to generally exclude all such evidence); while the Court may still end up deferring consideration of the objections until trial, the effort may still prove useful as it will, at a minimum, further educate and alert the Court to these issues.

Vigil's mother's claim for wrongful death is a different matter. This claim had to "be commenced within two years after the cause of action accrues." C.R.S. § 13-80-102(1)(d). Significantly, "[a] cause of action for wrongful death shall be considered to accrue on the date of death." Id. § 13-80-108(2). The limitation period is not defined by the alleged *causes* of the death: the only requirement is that the suit be brought within two years of the death. The wrongful death claim is timely.[1]

The second matter to be addressed is the scope of Sarah Burke's claims. The Court summarized Judge Miller's orders as holding she had claims regarding "actions taken during her arrest and the manner in which her release from custody was handled (but no claims based on her treatment while she was at the Pre-Arraignment Detention Facility."). The Court adheres to its view that this is an accurate summary of Judge Miller's rulings. Burke emphasizes Judge Miller's observation regarding her treatment (or lack thereof) for her diabetes and the allegation that Burke became hypoglycemic – but these observations were made during the discussion of Burke's arrest, not her treatment at the PADF. The events described on page 34 of Judge Miller's September 30, 2010, Order form the basis for Burke's claim regarding her arrest, and as stated initially this claim will be allowed. However, with respect to Burke's treatment while at the PADF, Judge Miller found uncontroverted evidence established Burke "adequately

---

[1]Apparently, the statute – passed in 1986 – altered prior rulings of Colorado courts holding that "a wrongful death claim must be filed within two years from the date the [wrongful act] resulting in death is discovered, or in the exercise of reasonable diligence should have been discovered, or within one year from such death, whichever event is later." Rauschenberger v. Radetsky, 745 P.2d 640, 643 & n.4 (Colo. 1987). This case discussed the status of Colorado law before section 13-80-102(1)(d) applied.

was able to communicate her medical needs and her current status regarding her insulin status and need for food. Therefore, I conclude that writing was an equally effective means of communication in this process." September 30 Order at 37. Judge Miller differentiated this issue from "the problems Burke had upon release," but as stated these issues are still in the case. Later, Judge Miller indicated he was denying summary judgment "to the extent it is based on [Burke's] treatment at the PADF," but he did so to preserve the claim insofar as it related to her release as he had already specifically held the matter related to Burke's treatment while in custody at the PADF was no longer an issue.

The third issue is the matter of standing for Colorado Cross-Disability Coalition ("CCDC") and the Colorado Association of the Deaf ("CAD"). Judge Miller concluded these entities have standing, but noted that "since standing is essential to the assertion of the claims, Defendants are not precluded from raising this issue again." September 30 Order at 41 & n.7. Events subsequent to Judge Miller's ruling might change the conclusion on this issue (for instance, a ruling in favor of Defendant on a particular claim), but there have been no such events. The Court adheres to Judge Miller's conclusion that, *presently*, it appears these entities have standing to seek injunctive relief. Of course, standing is a jurisdictional concept, and jurisdiction has to exist throughout the case. E.g., Lippoldt v. Cole, 468 F.3d 1204, 1216 (10th Cir. 2006).[2] Further development of the Record or future events may affect the analysis, but at present – for the reasons stated by Judge Miller – it appears the entities have standing.

The Court nonetheless takes this opportunity to address some of Defendant's arguments. To have standing, an organization must demonstrate, *inter alia*, that one or more of its members would otherwise have standing to sue. Defendant contends this is not established, in part because (1) the individual plaintiffs in this case do not have standing to seek injunctive relief and (2) the individual plaintiffs in this case have not been shown to be members of CCDC or CAD. These points are irrelevant, as they

---

[2]The Court rejects Plaintiff's intimation that the issue can somehow be waived. Jurisdiction – including standing – is an issue that cannot be waived. E.g., City of Colorado Springs v. Climax Molybdenum Co., 587 F.3d 1071, 1078-79 (10th Cir. 2009).

have no bearing on whether there are one or more members of these organizations who would have standing. In this regard, Defendant contends there is no real or immediate threat that anyone else will be subjected to the same treatment as the individual plaintiffs, but this is a matter that cannot be decided in Defendant's favor at this juncture. See September 30 Order at 42.

The final issue to be addressed is the scope of injunctive relief that can be sought. The Court noted that "the scope of injunctive relief that may be sought should be limited to relief related to the individual plaintiff's surviving claims. The Court reaches this conclusion because there are no claims asserted independently by CCDC or CAD." Plaintiffs ask the Court to reserve any decision on this issue until the close of evidence, which is the proper course. However, the Court's initial observation is valid: CCDC and CAD have no claims of their own. It is true they have asserted claims, but the claims they have asserted are entirely dependent on the individual plaintiffs' claims. For instance, there is no longer a claim of failure to accommodate diabetic detainees at the PADF because the only such claim – belonging to Burke – was disposed of on summary judgment. While the scope of injunctive relief is dictated by the violation established, there is no claim left in the case that permits establishment of a claim regarding treatment of diabetic detainees, so it is impossible for CCDC and CAD to obtain injunctive relief on such a claim.

Similarly, it seems that if Defendant prevails at trial with respect to the individuals' claims, there remains nothing to support CCDC's and CAD's claim for relief. The pleadings do not seem to justify a request for injunctive relief based on the treatment previously suffered by other, unnamed individuals. If an individual plaintiff's claim is successful, the entities may be permitted to present additional evidence (for the Court's consideration, because the Court will decide the issue of injunctive relief). However, CCDC and CAD have asserted no claim for liability – and hence, no claim for relief – independent of the individual plaintiffs' claims.

      With these additional explanations, the Court adheres to the summary set forth in its August 24 Order. An order establishing deadlines in conjunction with the March 2012 trial will be issued shortly.

IT IS SO ORDERED.

                                                      /s/ Ortrie D. Smith
                                                      ORTRIE D. SMITH, SENIOR JUDGE
DATE: October 13, 2011                          UNITED STATES DISTRICT COURT