IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| DEBBIE ULIBARRI, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | )  Case No. 07-CV-1814-ODS |
| | ) |
| CITY & COUNTY OF DENVER, et al., | ) |
| | ) |
| Defendants. | ) |

ORDER (1) DENYING PLAINTIFFS' MOTION FOR CLARIFICATION OF
OUTSTANDING ISSUES AND (2) DIRECTING PLAINTIFFS TO PROVIDE
ADDITIONAL BRIEFING ESTABLISHING JURISDICTION

Pending is Defendants' Motion to Clarify. The motion (Doc. # 342) is denied.

Plaintiffs seek clarification (or, really, amendment) of the Court's October 13, 2011, Order Addressing Outstanding Issues. In that Order, the Court concluded the organizational Plaintiffs presently appear to have standing, that the organizational Plaintiffs specifically may have associational standing to assert their members' claims for injunctive relief, and the issue can be raised at any time because standing is a component of jurisdiction.

Plaintiffs' position is that Judge Miller previously concluded they have *organizational* standing – that is, standing by virtue of injuries they have suffered as an organization. This is to be differentiated from *associational* standing, which bestows standing to an organization for injuries suffered by its members. Plaintiffs insist organizational standing exists if they have suffered an injury in fact and the challenged conduct frustrates the organization's purpose or causes it to devote resources to identifying and countering the challenged practice. The Court adheres to its ruling, which essentially is that a final conclusion cannot be made regarding the organizational Plaintiffs' standing.[1]

---

[1] Plaintiffs continue to complain that Defendants are raising new arguments regarding standing. The Court wishes Plaintiffs would stop complaining: as the Court has pointed out previously, standing is a jurisdictional concept and therefore can be

For their argument to succeed, the organizational Plaintiffs must be capable of asserting a claim in their own right; that is, they must be within the zone of interest to be protected by the statute.  E.g., Lujan v. National Wildlife Federation, 497 U.S. 871, 883 (1990).  In one of the cases relied upon by Plaintiffs, the Ninth Circuit recognized that an organization may have standing in the circumstances described by the organizational Plaintiffs, but only after concluding the statute's protections extended to organizations and  associations.  Smith v. Pacific Properties & Dev. Corp., 358 F.3d 1097, 1104-05 (9th Cir. 2004).  In short, an organization does not have standing simply because it opposes conduct that is contrary to law unless Congress has decreed that such an organization is intended to be protected by the statute.  Cf. Haitain Refugee Center v. Gracey, 809 F.2d 794, 813-14 (D.C. Cir. 1987).

The Supreme Court's holding in Havens v. Realty Corp. v. Coleman does not dictate a different result.  There, the Court held an organization had standing to sue under the Fair Housing Act for interference with its mission.  In reaching this conclusion, the Court held Congress intended to extend standing under the statute to the full extent permitted by Article III, meaning any injury in fact by a permitted plaintiff would satisfy the standing requirement.  Moreover, the statute was not limited to persons, so organizations and entities were Congressionally-permitted grievants.  455 U.S. 363, 372-78 (1982).  In contrast, the Americans with Disabilities Act ("ADA") protects qualified persons with disabilities, and provides remedies for aggrieved "persons."  Organizations are not persons, and certainly cannot be said to have disabilities.  Unlike the statute analyzed in Smith, the Court finds nothing indicating Congress extended the ADA's protections to corporations or associations for "injuries suffered while opposing violative conduct" – and, as the parties bringing the claims, it is the organizational Plaintiffs' burden to demonstrate a statutory basis for jurisdiction.[2]  Such a statute or

---

raised at any time. In fact, Defendants do not have to raise any arguments: the Court is obligated to consider its own jurisdiction regardless of what the parties do, and therefore can raise (or reconsider) the issue *sua sponte*.

[2]The Tenth Circuit's decision in Tandy v. City of Wichita does not require a different result.  There, the Court of Appeals held Title II of the ADA confer standing to

judicial holding may exist, but until it is presented to the Court by Plaintiffs the Court cannot definitively conclude the organizational plaintiffs have organizational standing to bring a claim for injuries allegedly suffered by Defendants' alleged violations of the ADA.[3]  The key to the inquiry involves analysis of the statutes invoked by Plaintiffs.  For instance, the Supreme Court has held a caucasian tenant has standing under the Fair Housing Act to assert a claim premised on discrimination against African-Americans because the discriminatory act deprives the tenant of his or her interest in living in a diverse community.  Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 209-11 (1972).  That same argument was insufficient to support a claim under the Equal Protection Clause, because the Constitution does not protect such interests and "Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of the statute."  Warth v. Seldin, 422, U.S. 490, 514 (1975).  Thus, those with standing under the Fair Housing Act do not necessarily have standing under other statutes.  Plaintiffs have not presented a sufficient analysis of the ADA or the Rehabilitation Act to justify a conclusion that they have standing to present their claims.

　　　　Setting these observations aside, the Court is not even convinced the organizational Plaintiffs are really asserting organizational standing.[4]  Their claims arise entirely from the individual Plaintiffs' claims.  Thus, despite the label they are ascribing

---

the outer limits of Article III, but did so in the context of analyzing the *types* of injuries that a person with a disability could allege to support standing.  The Court of Appeals did not bestow standing on (1) non-persons or (2) persons without a disability.  380 F.3d 1277, 1285-88 (10th Cir. 2004).

　　　[3]It should also be remembered that, assuming their other arguments prove to be correct, the organizational Plaintiffs still must demonstrate they "suffered impairment" in their role before gaining any judicial relief.  Havens, 455 U.S. at 379 n.21.

　　　[4]For that matter, the Court is not sure why Plaintiffs adamantly reject reliance on associational standing, particularly given (1) that is probably the only path they have to justify injunctive relief and (2) associational standing appears more readily satisfied than organizational standing.

3

to their jurisdictional invocation, in substance they are alleging they suffered damage because of injuries to their members.  The organization's efforts to ferret out and oppose discrimination does not appear to be within the zone of interest to be protected by either the Rehabilitation Act or the ADA.

This leads to the Court's final observation.  The organizational Plaintiffs have minimized the truly important part of the Court's October 13 Order: there are no independent claims asserted by CCDC or CAD.  Even if an organization could assert a claim for damages to itself under the ADA, it is axiomatic that the organization would first have to establish that violations existed.  Here, the only violations alleged *in the Second Amended Complaint* are those alleged in the context of individual plaintiffs.  Some of those claims have been dismissed, and the Court will not recount here the remaining claims.  For present purposes it is only important to note that the existence and extent of the organizational Plaintiffs' relief depends entirely on the existence and extent of the individual Plaintiffs' success on their claims.  In short, only the violations alleged in the Second Amended Complaint (less those that have been resolved through dismissal or summary judgment) are going to be litigated – and the organizational Plaintiffs cannot prevail if the individual Plaintiffs do not.  This is true notwithstanding Plaintiffs' position that "the Organizational Plaintiffs have independent claims based on their organizational standing, [so] Plaintiffs expect that the violations established may go beyond those of [the individual plaintiffs]."  Plaintiffs' Reply Suggestions at 6.  In addition, the only relief that could be obtained would have to be somehow related to the violations actually suffered by the individual plaintiffs – and the Court has no idea what relief those violations would justify for the organizational plaintiffs.  The Court adheres to its prior conclusion that "CCDC and CAD have asserted no claim for liability – and hence, no claim for relief – independent of the individual [P]laintiffs' claims."

The Court's prior conclusion stands: no definitive determination about the organizational plaintiffs' standing to pursue their claims will be made at this time.  To aid the Court in evaluating this issue, Plaintiffs shall submit additional briefing explaining the basis for this Court jurisdiction in light of the issues noted earlier in this Order.  Plaintiffs'

submission shall be filed on or before February 1, 2012, and Defendants shall respond on or before March 1, 2012.

IT IS SO ORDERED.

DATE: December 22, 2011

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT