IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

DEBBIE ULIBARRI, et al.,            )
                                    )
            Plaintiffs,             )
                                    )
vs.                                 )   Case No. 07-CV-1814-ODS
                                    )
CITY & COUNTY OF DENVER, et al.,    )
                                    )
            Defendants.             )

<u>SECOND ORDER IN LIMINE</u>

During the pretrial conference on February 9 the Court allowed the parties to file supplemental motions in limine. Those motions are granted in part and denied in part.

The parties are reminded that these rulings are interlocutory. Therefore, even if a request to exclude evidence is denied, an objection is necessary to preserve the issue. If evidence is excluded, it shall not be discussed in the jury's presence unless the Court is persuaded during trial to change its ruling.

The Court also intends these rulings to apply to proceedings in front of the jury. The rulings do not necessarily apply to proceedings in any subsequent proceedings relating to Plaintiffs' request for injunctive relief.

*Plaintiffs' First Supplemental Motion (Doc. # 387)*

Plaintiffs' motion to bar testimony from Judge Brett Woods is denied. Plaintiffs' contend Judge Woods does not remember anything about Krebs' arraignment. The Court is not convinced this is entirely accurate, nor is the Court convinced this is something that should be decided in advance of trial.

*Plaintiffs' Second Supplemental Motion (Doc. # 392)*

1.      Plaintiffs seek to preclude the testimony of Jeff Jenkins and Margaret Reiland because they were not formally disclosed in Rule 26 disclosures – even though Plaintiffs have been well-aware of these individuals' connection to the case. Jenkins was a police officer involved in Vigil's arrest and Dr. Reiland is involved in training police officers.

Plaintiffs concede these individuals are mentioned in documents that were previously provided but contend they were not formally disclosed in the precise manner described in Rule 26.  Plaintiffs have obviously investigated these witnesses because they purport to know what they have to say and have even listed documents from Dr. Reiland on their exhibit index.  Plaintiffs seek to elevate form over substance, and the Court is disinclined to credit this argument.  Plaintiffs have all the knowledge they would receive from a disclosure, and there is no reason to bar these witnesses from testifying.

2.      Dr. Peter Crum is proffered by Defendants as an expert witness.  However, Judge Miller previously observed that Dr. Crum was not properly disclosed as an expert witness and refused to consider any of his opinions when ruling on the various motions in September 2010 – although Judge Miller did not strike Dr. Crum's factual "descriptions of events and routine practice concerning communications between inmates at the PADF and DCJ."  It appears that discovery closed, at the latest, on August 17, 2009 (see Doc. # 187); in any event, it does not appear Defendants ever properly disclosed Dr. Crum as an expert as required by Rule 26.  Defendant contends it did not need to produce file a Rule 26 disclosure for Dr. Crum because he is not a retained expert – but Judge Miller was unpersuaded by this argument (apparently because he did not believe Dr. Crum was employed by Defendants).  Therefore, consistent with Judge Miller's rulings, the Court concludes Dr. Crum may not offer expert testimony at trial.

3.      Plaintiffs contend that certain witnesses were disclosed by Defendants as required by Rule 26(a)(1), but not sufficiently.  Plaintiffs' complain they do not know enough about the witnesses identified and there is a risk of "trial by ambush" but the complaint is not convincing.  The disclosures were made *years* ago: if they were somehow insufficient, the issue should have been raised long ago.  Moreover, Plaintiffs have been on notice that these were individuals with information about the case and have had more than sufficient time to interview them, conduct discovery, or otherwise learn what information they possessed.

4.      The Court generally declines to exclude witnesses in advance of trial simply because the opposing party represents the witnesses have no relevant information to

offer. A contemporaneous objection on grounds of relevance is sufficient to protect the parties' interests. More importantly, a contemporaneous objection is better calculated to present the issue in a manner that allows the Court to make a fully-informed opinion.

That said, the Court cautions the parties that it is not in anyone's interest to inundate the jury with multiple witnesses who will testify to the exact same uncontroverted facts. The Court is not going to determine in advance of trial whether cumulative testimony is offered or contemplated, but implores the parties to keep this admonition in mind.

5. Plaintiffs seek to exclude evidence regarding the reactions of staff and inmates to Vigil's suicide. The Court agrees that this information is irrelevant and the subject matter is excluded.

The Court will not preclude any otherwise-admissible expert testimony from Dr. Thomas Scarano. Plaintiffs contend he was not properly disclosed as required by Rule 26(a)(2)(C), but this rule was added in 2010 – *after* the time for making disclosures in this case. Arguably, Defendants should have gone back and complied with the amended Rule, but Plaintiffs were sufficiently apprised of Dr. Scarano's testimony on October 5, 2009. See Doc. # 213.

Dr. McMillan does not appear to have been disclosed in any manner at any time, so he cannot testify unless Defendants can demonstrate to the Court's satisfaction that he was properly disclosed.

6. Plaintiffs contend Vigil's booking photo is irrelevant. Defendants contend it should be admitted because "there is no information in this exhibit that has been [previously] excluded by the Court." This argument is nonresponsive and begs the question. Having failed to explain why the booking photo is relevant, Defendant is barred from introducing it.

Plaintiffs also seek to bar various police officers from testifying, contending the only testimony they can offer relates to Vigil's arrest and that evidence has already been excluded. In reality, however, the Court has barred evidence about the *charges* for which Vigil was arrested – and while the officers' testimony must comport with the prior Order in Limine they can testify about other matters. To reiterate, however: this ruling

does not preclude Plaintiffs from making a contemporaneous objection if they deem it prudent to do so.

7.     In its February 10, 2012, Order, the Court addressed matters relating to (1) Debbie Ulibarri's criminal convictions and (2) Vigil's juvenile convictions.  Plaintiffs raise additional matters relating to (1) Brandon Ulibarri's criminal convictions and (2) Brandon Ulibarri's past drug and alcohol use, and (3) Debbie Ulibarri's drug and alcohol use.

Defendants represented to Plaintiffs they will "not question Mr. Ulibarri concerning his juvenile convictions or dependency and neglect proceedings . . . ."  This would be the Court's ruling if the matter were contested, and the Court hereby requires Defendants adhere to this plan.

Issues relating to Brandon's and Debbie's drug use are more problematic. Plaintiffs compare the situation to the Court's prior rulings but the comparisons are inapt.  Previously, the Court held (1) prior convictions did not bear on the relationship between Debbie and her son and (2) convictions more than ten years old were unduly prejudicial and could not be used for purposes of impeachment.  These holdings have no direct bearing here, where Defendants seek to introduce evidence bearing on Debbie's life with her late son because it may be relevant to damages.  The key inquiry is whether this evidence actually bears on damages, and the Court presently cannot answer this question because it lacks sufficient input from the parties on the issue.  The Court does not know what damages are sought by either Debbie Ulibarri or Vigil's estate, nor does it know exactly how Defendants intend to use this evidence.  In an abundance of caution, the Court will preclude Defendants' use of this evidence until the matter can be considered in context with other evidence introduced at trial.

Defendants also allude to testimony from Brandon "that he observed Shawn Vigil drink and smoke and that they shared this behavior."  They contend this testimony demonstrates Vigil's "ability to effectively communicate . . . since it would be highly unlikely that Vigil needed or had access to a sign language interpreter . . . when he was able to acquire cigarettes or alcohol."  The Court disagrees: the mere fact that Vigil smoked and drank as a minor has no bearing on his communicative abilities. Defendants also contend the fact that Vigil engaged in this "'adult' behavior" rebuts

Plaintiffs' claim that Vigil functioned at a second grade level. Again, the Court disagrees. Evidence that Vigil smoked and drank as a juvenile will not be admitted.

8. Plaintiffs seek leave to participate in voir dire. During the Pretrial Conference the Court set forth the conditions for such participation, one of which was that both sides must express the desire to participate. Defendants have now expressly indicated they want the Court to conduct all of the voir dire. Therefore, the Court will conduct all of the voir dire.

9. Plaintiffs seek an order requiring Defendants to produce the 2004 American Correctional Association Standards relied upon by Gary Wilson. Plaintiffs represent that Defendants promised, on February 15, 2012, to produce the book if it could be located. While the Court expects attorneys to honor their promises, the Court discerns no basis for ordering anything at this juncture.

10. Plaintiffs seek approval of certain descriptions of the law to be used during opening statements. However, there is no legal support establishing that the proffered passages are correct statements of the law, and a cursory review reveals the statement is infirm in several respects (including, for instance, suggesting Defendants violated the ADA and the Rehabilitation Act by failing to accommodate Burke's diabetes). Regardless, the Court does not intend to pre-screen the parties' opening statements.

As stated during the pretrial conference, the Court believes it may help the jury if a preliminary statement about the elements of Plaintiffs' claims is provided as part of the instructions read before opening statement. Examples of what the Court intends can be found as a part of the Tenth Circuit's Model Criminal Instruction 1.01. A better example is Eighth Circuit Criminal Instruction 1.02. The Court encourages the parties to include an instruction of this type as part of their proposals – and, as with all of their proposed instructions, the parties shall include two copies: one with citations to authority and one without.

*Defendants' Supplemental Motion (Doc. # 390)*

1. Plaintiffs have included Major Jon Michael Scott as a witness. His only apparent connection to this case lies in the fact that he has his own lawsuit against Defendants

alleging that his rights under the ADA were violated in and after 2010.  The Court agrees that this testimony is not admissible in proceedings before the jury, but it may be admissible in proceedings before the Court related to the need for and scope of injunctive relief.

2.	In the face of Defendants' objection, Plaintiffs disclaim any intent to use Exhibitis 145-147 and 185-187 or to call Raymond Kilthau as a witness.  The Court formalizes this plan by precluding Plaintiffs from using these exhibits or calling Mr. Kilthau absent prior leave of Court.

3.	Defendants seek to exclude specific exhibits and court decisions related to lawsuits involving Michael Haley.  The Court grants this request.

The exhibits consist of materials from four separate lawsuits.  Two are decisions granting preliminary injunctions, one is a Magistrate Judge's Report and Recommendation, and one is an expert's report.  None of these are final judgments.  None of these involve the ADA.  None of these involve the Rehabilitation Act.  Therefore, none of these exhibits are relevant in establishing Haley's knowledge and understanding of the ADA or the Rehabilitation Act, and raise a serious risk of forcing this case to be a (re)trial of other events and cases.  The evidence is excluded.

4.	Defendants seek to exclude annual reports containing statistics regarding the jail because the Court has already ruled the issue is inadmissible.  The Court does not understand the need for this ruling: if the Court has already ruled the issue is inadmissible, then obviously exhibits related to the issue are inadmissible absent further ruling from the Court.  The Court expects the parties already understand this and Plaintiffs' response confirms their understanding.  There is no need for a further ruling.

IT IS SO ORDERED.

                                            /s/ Ortrie D. Smith
                                            ORTRIE D. SMITH, SENIOR JUDGE
DATE: February 23, 2012          UNITED STATES DISTRICT COURT