IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

DEBBIE ULIBARRI, et al.,        )
                               )
          Plaintiffs,     )
                               )
vs.                          )     Case No. 07-CV-1814-ODS
                               )
CITY & COUNTY OF DENVER, et al.,  )
                               )
         Defendants.    )

## ORDER AND OPINION DISMISSING COLORADO CROSS DISABILITY COALITION AND COLORADO ASSOCIATION OF THE DEAF FOR LACK OF STANDING[1]

On several occasions the Court has raised concerns about standing for the two organizational plaintiffs (Colorado Cross Disability Coalition and Colorado Association of the Deaf). In so doing, the Court preliminarily indicated they appeared to have standing to seek injunctive relief but they lacked standing to seek damages. See Doc. # 334 at 1-2; Doc. # 339 at 3; Doc. # 352 at 1, 4-5. The Court's last Order stated that "no definitive determination" could be made at that time and directed the parties to submit additional briefing. Having reviewed the parties' arguments, the Court concludes the organizational plaintiffs do not have standing to seek any relief in this case.

## I.  BACKGROUND

In an Order dated August 24, 2011, the Court summarized the remaining claims in this case. Specifically,

---

[1]Plaintiffs' suggestion that this should be treated as a Motion for Summary Judgment is rejected; dismissal for lack of jurisdiction is governed by Rule 12(b)(1), and the submission of material outside the pleadings does not require conversion of a 12(b)(1) motion into a summary judgment motion. The requirement to "convert" applies only to motions under Rule 12(b)(6) and 12(c); it does not apply to motions alleging a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(d); Davis v. United States, 343 F.3d 1282, 1295 (10th Cir. 2003). As the party invoking jurisdiction, it is Plaintiffs' burden to demonstrate standing exists. E.g., In re Miller, 666 F.3d 1255, 1261 n.4 (10th Cir. 2012 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

1.    The Estate of Shawn Vigil has claims

    a.    based on the ADA and the Rehabilitation Act, related solely to Vigil's detention and death,

    b.    based on negligence (including negligent failure to train or supervise) related to Vigil's treatment during detention and his subsequent suicide.

2.    Roger Krebs has claims based on the ADA and Rehabilitation Act related solely to the manner in which his arraignment was conducted.

3.    Sarah Burke has claims based on the ADA and Rehabilitation Act relating to actions taking during her arrest and the manner in which her release from custody was handled (but no claims based on her treatment while she was at the Pre-Arraignment Detention Facility).

4.    Debbie Ulibarri (Vigil's mother) has a claim for wrongful death.

That order also observed "[t]he individual plaintiffs may seek monetary relief, but are not eligible to seek injunctive relief."  This conclusion has not been contested at any point in these proceedings, and the basis for this conclusion will be addressed later in this Order.

The organizational plaintiffs seek recovery of damages as well as injunctive relief.  As mentioned earlier, and as reflected in the Court's orders, the legal basis for the organizational plaintiffs' claims has not been clear.  As clarity has increased, the Court has become increasingly concerned that the organizational plaintiffs lack standing to seek the relief sought.

## II.  DISCUSSION

Standing is one of several doctrines that reflect and enforce the fundamental limitations on the judiciary's role by insuring that the plaintiff has a sufficient stake in the outcome to warrant his, her, or its invocation of the federal courts' jurisdiction. Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009).  The constitutionally-mandated requirements for standing can be summarized as follows: the plaintiff must demonstrate (1) it suffered an injury in fact that is (2) fairly traceable to the challenged

action of the defendants and (3) and that can likely be redressed by the relief requested. Moreover, the alleged injury must possess two characteristics: it must be "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Tandy v. City of Wichita, 380 F.3d 1277, 1283 (10th Cir. 2004).  The organizational plaintiffs seek both retrospective relief (in the form of damages) and prospective relief (in the form of an injunction), which is significant because "[e]ach Plaintiff must have standing to seek each form of relief in each claim," Bronson v. Swensen, 500 F.3d 1099, 1106 (10th Cir. 2007).  Moreover, "[t]he 'injury in fact' requirement "is satisfied differently depending on whether the plaintiff seeks prospective or retrospective relief." Tandy, 380 F.3d at 1283.


### A.  Standing to Seek Damages


"A plaintiff seeking retrospective relief . . . satisfies the 'injury in fact' requirement if [it] suffered a *past injury* that is concrete and particularized." Id. at 1284 (emphasis added).  In this context it is not enough that the organizational plaintiffs' members suffered a concrete and particularized injury because a party may not seek damages for past injuries suffered by others.  E.g., Elk Grove Unified Sch. Dist. v. Newdow, 542 US. 1, 12 (2004); Kansas Health Care Ass'n v. Kansas Dep't of Social & Rehab. Servs., 958 F.2d 1018, 1021-22 (10th Cir. 1992).  An injury is not concrete and particularized where the plaintiff presents a generalized grievance that affects everyone in the exact same manner.  E.g., Hein v. Freedom From Religion Foundation, Inc., 551 U.S. 587, 601 n.2 (2007); Lujan v. Defenders of Wildlife, 504 U.S. 555, 573-74 (1992).  The organizational plaintiffs insist the ADA and the Rehabilitation Act have been construed to grant jurisdiction to the fullest extent permitted by the Constitution, but the irreducible requirements imposed by Article III mandates there must be an injury – and Congress cannot obviate this requirement.  E.g., Summers, 555 U.S. at 497; Bennett v. Spear, 520 U.S. 154, 162 (1997).

The organizational plaintiffs insist they have suffered an injury, but the Court's review of the Record reveals otherwise.  The Second Amended Complaint ("SAC") does

not allege any conduct directed to, or even involving, the organizational Plaintiffs.  In their most recent filing, the organizational plaintiffs rely on allegations regarding their purpose and mission of advocating for access and rights for disabled individuals.  They contend that they were injured because they diverted resources to combat the Defendants' violations.  However, these expenditures are byproducts of this lawsuit and therefore cannot serve as the injury.  See Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 107-08 (1998).  The lack of an injury is confirmed by Plaintiffs' Calculation of Damages filed on May 15, 2012.  There, the organizational plaintiffs eschewed any claim that they suffered economic loss or other injury, and seek only nominal damages simply because Defendants' alleged violations exist.  Thus, they are not seeking redress for the injuries they allege; they seek to remedy violations merely because violations exist.[2]  The mere existence of a violation is insufficient to establish Plaintiff has suffered the concrete and particularized injury necessary to satisfy the constitutional requirements for standing.

The organizational plaintiffs point to other cases in which organizations were permitted to proceed on claims under the ADA and Rehabilitation Act, but those cases are distinguishable.  For instance, in Regional Economic Community Action Program, Inc. v. City of Middletown, the organizational plaintiff suffered a concrete and particularized injury "through the denial of its special-use permit application; it therefore has individual standing."  294 F.3d 35, 46 n.2 (2d Cir.), cert. denied, 537 U.S. 813 (2002).  In Greater Los Angeles Council on Deafness, Inc. v. Zolin, the organizational plaintiff sought declaratory and injunctive relief and expenses related to that effort – it did not seek damages.  812 F.2d 1103, 1115 (9th Cir. 1987).  The unpublished District

---

[2]"The recovery of such expenses unrelated to litigation would assuredly support Article III standing," 523 U.S. at 107-08, but as was the case with the statutes in Steel Co., the ADA and the Rehabilitation Act do not provide for recovery of such expenses. Perhaps this is why the organizational plaintiffs have not sought their recovery. Regardless, this failing demonstrates another impediment to standing: the lack of redressability, which is the third constitutionally-mandated requirement.  If the injury is expenditure of resources to investigate and combat violations, and the law does not permit recovery of those expenditures, then standing is absent because the injury cannot be remedied through an award of damages.

Court opinions cited are also distinguishable in that the relief sought was prospective, not retrospective – at least insofar as the organizational plaintiffs were concerned.

As a general matter, it may be that an organization has standing under the ADA and the Rehabilitation Act to seek redress for concrete and particularized injuries it has suffered.  However, in *this* case the organizational plaintiffs have not suffered a concrete and particularized injury, so they do not have standing to seek damages. Granting them standing in this case would be no different from granting standing to every organization or individual who advocates for or is concerned about rights and access for disabled individuals.  This would bestow standing to anyone interested in seeking out, uncovering, and opposing unlawful conduct anywhere it may be found – in effect, a roving commission to seek out and combat violations of the law, which would eviscerate the requirement that the injury be concrete and particularized.[3]

### B.  Standing to Seek Injunctive Relief

An association may bring suit on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343 (1977).  The second factor is not at issue.  The third factor is not at issue insofar as the organizational plaintiffs seek declaratory and injunctive relief, because participation of

---

[3]The organizational plaintiffs will contend this conclusion contradicts Judge Miller's preliminary decision of September 30, 2010.  Judge Miller's decision was only preliminary, and the Court has since received further briefing and explanation of the issues.  Judge Miller's order focuses on the issue of mootness and does not focus on whether the organizational plaintiffs suffered the requisite injury to support standing for a damages claim.  In fact, all Judge Miller concludes is that the organizational plaintiffs "have adequately demonstrated their standing to seek injunctive relief" and does not address standing to seek damages.  Regardless, the Court's continuing obligation to insure it has jurisdiction necessitates the ability to revisit the issue should circumstances warrant.

individual members is not necessary to ascertain whether conditions at facilities or Defendants' policies violate the Rehabilitation Act or the ADA. The issue is whether Plaintiffs have demonstrated (or can demonstrate) any of its members would otherwise have standing to sue in their own right.

As stated earlier, it has been accepted – since before the undersigned was assigned this case – that the individual plaintiffs cannot have standing to seek injunctive relief. This understanding is fatal: if individual plaintiffs cannot have standing, then the organizational Plaintiffs cannot have standing. The organizational Plaintiffs now endeavor to demonstrate the existence of individuals with standing, but the Court concludes otherwise.

The individual plaintiffs in this suit do not have standing to seek injunctive relief on their own because they cannot demonstrate a realistic threat that they will be arrested or otherwise involved in the criminal justice system. E.g., Winsness v. Yocom, 433 F.3d 727, 735-36 (10th Cir. 2006) (applying City of Los Angeles v. Lyons, 461 U.S. 95 (1983)); Phelps v. Hamilton, 122 F.3d 1309, 1316 (10th Cir. 1997) (same). Indeed, this point has been conceded throughout this litigation – until now. The organizational Plaintiffs now contend Krebs and another individual (Major Jon Michael Scott) are likely to have future interactions with Defendants. It is contended that Krebs and Scott have committed other crimes and that Krebs is likely to experience "welfare checks" in the future. These allegations are insufficient. Burke and Scott are not contending under oath that they plans to commit crimes in the future, and the fact that they have been arrested in the past for crimes does not demonstrate they will be arrested in the future. Indeed, Plaintiff's reasoning was rejected by the Supreme Court rejected in Lyons when it said "[t]hat Lyons may have been illegally choked by the police on October 6, 1976,   . . . does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense . . . ." 461 U.S. at 105; see also Winsness, 433 F.3d at 735 ("the fact of past injury does not confer standing to seek prospective injunctive relief without some credible threat of future injury."); Riggs v. City of Albuquerque, 916 F.2d 582, 586 (10th Cir. 1990), cert. denied, 499 U.S. 976 (1991). Indeed, in a later case the Supreme Court held "it seems to us that attempting to

anticipate whether and when these respondents will be charged with crime . . . takes us into the area of speculation and conjecture." O'Shea v. Littleton, 414 U.S. 488, 497 (1974).  As stated earlier, speculative and conjectural injuries are insufficient to support standing.

The speculation that Burke may experience "welfare checks" in the future does not demonstrate a likelihood of being arrested and committed to custody in the jail.  It should also be noted that (1) there is no claim in this case regarding official conduct during welfare checks and (2) Burke was not arrested because of anything discovered during the welfare check, but rather because there was an outstanding warrant for her arrest because she failed to attend parenting classes as required by court order.

The need to identify a particular individual/member who has standing to seek injunctive relief in their own right is clear.  The organization must point to a particular individual who possesses standing to insure Article III's standing requirements are satisfied.  Kansas Health Care Ass'n, 958 F.2d at 1021; see also Colorado Environmental Coalition v. Wenker, 343 F.3d 1221, 1241 (10th Cir. 2004) (Ebel, J., concurring in part and dissenting in part).  "The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." Warth v. Seldin, 422 U.S. 490, 511 (1975).  The organizational plaintiffs have failed to identify any such member who could bring suit to obtain injunctive relief.

The organizational plaintiffs also cannot satisfy their burden by inviting the Court to speculate that there is a high likelihood (or certainty) that some unknown member has or will have standing.  Such an approach was rejected by the Supreme Court in Summers, which was decided after this case was filed.  In that case, the majority examined the dissent's proposition that the Earth Island Institute had so many members the Court could simply presume that at least one of them intended to visit the Sequoia National Forest:

> The dissent proposes a hitherto unheard-of test for organizational
> standing: whether, accepting the organization's self-description of the

activities of its members, there is a statistical probability that some of
those members are threatened with concrete injury. Since, for example,
the Sierra Club asserts in its pleadings that it has more than "700,000
members nationwide, including thousands of members in California' " who
use and enjoy the Sequoia National Forest,'  post, at 1154 (opinion of
BREYER, J.), it is probable (according to the dissent) that some
(unidentified) members have planned to visit some (unidentified) small
parcels affected by the Forest Service's procedures and will suffer
(unidentified) concrete harm as a result.  This novel approach to the law of
organizational standing would make a mockery of our prior cases, which
have required plaintiff-organizations to make specific allegations
establishing that at least one identified member had suffered or would
suffer harm.

555 U.S. at 497-98.  Summers (and in particular the last sentence from the excerpt) has

since been understood as establishing (or confirming) that an organizational plaintiff

must identify the specific member upon whose standing the organization relies in order

to confirm that Article III's requirements are met.  E.g., New Jersey Physicians, Inc. v.

President of the United States, 653 F.3d 234, 241 (3d Cir. 2011); Chamber of

Commerce of the United States v. Environmental Protection Agency, 642 F.3d 192,

200-01 (D.C. Cir. 2011); Western Watersheds Project v. Kraayenbrink, 632 F.3d 472,

483 (9th Cir.), cert. denied, 132 S. Ct. 366 (2011).[4]

     The organizational plaintiffs in this case have not demonstrated that any of its

members have standing to seek injunctive relief.  The Court acknowledges it may be

impossible for them to do so.  Lyons and O'Shea make it exceedingly difficult for an

individual to demonstrate they will have the future contact with law enforcement

necessary to create standing – making it exceedingly difficult for the organizational

plaintiffs to identify such a person among their members.  This is the distinguishing

feature from the other cases Plaintiffs have cited: in those cases, the individuals testified

that they would frequent the location or other circumstances giving rise to the violation.

---

[4]It is at this point that the undersigned respectfully departs from Judge Miller's
prior preliminary conclusion.  Judge Miller did not address this requirement for
associational standing and thus had no occasion to try to identify an individual member
who had standing to seek injunctive relief.  This may be attributed to the fact that the
arguments presented to him were couched in terms of mootness and not standing.

For instance, in <u>Tandy</u>, the individual plaintiffs were able to provide affidavits establishing they intended to use Wichita's public transportation system in the future. <u>Tandy</u>, 380 F.3d at 1284.  Individuals are able to aver that they will frequent buses, parks, and the like; they are not  able to convincingly suggest they are likely to be arrested in the future.[5]

## III.  CONCLUSION

The organizational plaintiffs have not suffered a concrete and particularized injury that would grant them standing to seek damages.  The organizational plaintiffs are also unable to identify a member who has standing to seek injunctive relief.  Accordingly, the organizational plaintiffs lack standing to seek relief in this case.

IT IS SO ORDERED.

/s/ <u>Ortrie D. Smith</u>
ORTRIE D. SMITH, SENIOR JUDGE
DATE: July 20, 2012                          UNITED STATES DISTRICT COURT

---

[5]The United States is not hamstrung by these standing requirements, so it could bring suit to enforce the ADA and the Rehabilitation Act.  In addition, an individual in the jail *at the time the suit is filed* would have standing to challenge conditions in the facility. Of course, such a person's claim might become moot, but then the exception for controversies that are capable of repetition yet evading review *might* apply.  In this case, none of the organizational plaintiffs' members were in jail at the time this suit was filed, so there is no need to explore whether this possibility is truly viable.